UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-00249-TBR

ISCO INDUSTRIES, INC.                                                                                                Plaintiff

v.

CHARLES SHUGART                                                                                             Defendant

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant Charles Shugart's Motion to Dismiss. (Docket No. 9.) Plaintiff ISCO Industries, Inc. has responded. (Docket No. 10.) Defendant Shugart has replied. (Docket No. 18.) This matter is now fully briefed and ripe for adjudication. For the following reasons, the Court will **DENY** Defendant Charles Shugart's Motion to Dismiss. (Docket No. 9.)

BACKGROUND

Plaintiff ISCO Industries, Inc. is a piping solutions provider based out of Louisville, Kentucky, which sells/provides various piping products and solutions through the United States and internationally. (Docket No. 1, at 2.) ISCO employs salespersons to market and sell its product and provides these salespersons certain business information, such as ISCO's prices, fabrication capabilities, supply chain management, and customer lists. (*Id.*)

Previously, Defendant Charles Shugart was hired by Plaintiff ISCO Industries as a salesman and began working on March 5, 2007. (*Id.*) Shugart signed a non-compete, non-solicitation agreement (the "NCA Agreement"), (Docket No. 9-2), on February 15, 2008.

(Docket No. 1, at 3.) Shugart worked for ISCO for approximately six years as a salesman before leaving on December 2, 2013. (*Id.* at ¶ 32.) Subsequently, Shugart began working for Gajeske, Inc., as a salesperson. (*Id.*) Gajeske is a distributor of polyethylene pipe, pumps, valves, fittings, fabrications, and fusion equipment. (*Id.*)

On December 13, 2013, ISCO issued Shugart a cease and desist letter alleging a breach of the NCA Agreement. Specifically, this letter alleged "ISCO has direct evidence that you have been contacting customers of ISCO to solicit the very business that ISCO provided to these customers while you were employed with ISCO." (Docket No. 1-3, at 2.)

On March 13, 2014, ISCO filed a Complaint seeking enforcement of the NCA Agreement and recovery of monetary damages. (Docket No. 1.) ISCO asserts claims for breach of contract, specific performance, and unjust enrichment against Shugart. (*Id.*) Shugart argues the NCA Agreement is unenforceable under Kentucky law and, therefore, ISCO fails to state a claim.

STANDARD

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A defendant may move to dismiss a claim or case because the complaint fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court

need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (citing FED. R. CIV. P. 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

DISCUSSION

The NCA Agreement provides, in relevant part, that:

> 6. **Covenants of Employee.** (a) During employee's term of service with the Company, and for a period of three (3) years thereafter Employee shall not directly or indirectly engage *in any activity or business in competition with* any aspect of the business of *the Company* at the time of Employee's termination *by soliciting, contacting or otherwise dealing with any customer of the Company, or other people that Employee sought to make a customer of the Company within three (3) years of the termination hereof . . .*

(Docket No. 9-2, at 3) (emphasis added.) Shugart points out that, while this section contains a temporal limitation of three years, there is no geographical limitation.

The NCA Agreement also provides in Section 3, Non-Disclosure of Confidential Material, that:

> Unless authorized by the Company in writing, Employee will not, during or at any time after separation from employment, *use for himself or others, or divulge or disclose to others, any information, knowledge or data relating to the Company's business in any way obtained by Employee while employed by the Company, other than published material properly in the public domain*. This includes, but is not limited to, know-how, information, knowledge and data relating to processes, methods, formulae, apparatus, products manufactured, used, developed, investigated or considered by the Company, its subsidiaries and affiliates, product use or application, customer lists, financial information, customer requirements, terms of sales, and other trade relations matters, and to any confidential information of any kind relating to the Company, its subsidiaries and affiliates or the customers or suppliers of any of them.

(Docket No. 9-2, at 2) (emphasis added.) Shugart points out that Section 3, unlike Section 6, does not have a temporal limitation, placing an indefinite restriction on him. (Docket No. 9-1, at 4.)

Shugart argues that ISCO does not state a claim against him because these provisions are facially invalid and unenforceable under Kentucky law "because (i) there is no geographic scope whatsoever; and (ii) the intended operation of the subject provisions is an equitable restraint of trade as applied to Shugart." (*Id.* at 7.) Because ISCO bases its claims against Shugart on the NCA Agreement, the Court will address the enforceability of these provisions.

I. Enforceability of Provisions

Under Kentucky law, covenants not to compete "are valid and enforceable if the terms are reasonable in light of the surrounding circumstances." *Crowell v. Woodruff*, 245 S.W.2d 447, 449 (Ky. 1951). To be enforceable, the restraint must be "no greater than reasonably

necessary to" prevent unfair competition by the employee or his subsequent employer. *Id.* "[T]he test of reasonableness is whether the restraint, considering the particular situation and circumstances, is such only as to afford fair protection to the legitimate interests of the [employer] and not so extensive as to interfere with the interests of the public." *Stiles v. Reda*, 228 S.W.2d 455, 456 (Ky. 1950). In determining whether the covenants are valid and enforceable, courts consider: (a) the "nature of the business or profession and employment," including the character of the service that is performed by the particular employee; (b) the duration of the restriction; and (c) the scope and/or territorial extent of the restriction.[1] *Id.*

In Kentucky, the general rule is that covenants not to compete without any geographic scope are invalid and unenforceable because they constitute unreasonable restraints of trade. *Calhoun v. Everman*, 242 S.W.2d 100, 102 (Ky. 1951) (considering alleged oral agreement not to compete). *But see Hodges v. Todd*, 698 S.W.2d 317, 318-320 (Ky. Ct. App. 1985) (finding covenant not to compete contained in contract for sale of business was enforceable, notwithstanding absence of geographic scope, and that trial court had authority to enforce the covenant by establishing a reasonable geographical limitation). However, courts draw a distinction between broader, more general covenants not to compete and non-solicitation provisions aimed at previous and/or potential customers, finding the latter inherently more reasonable.

---

[1] Recently, a similar, but more comprehensive, approach has been articulated by the Kentucky Court of Appeals. "The proper approach to the rule articulated in *Hammons* and elsewhere can be reduced to a series of factors which should be considered in nearly every case. They are: (1) the nature of the industry; (2) the relevant characteristics of the employer; (3) the history of the employment relationship; (4) the interests the employer can reasonably expect to protect by execution of the noncompetition agreement; (5) the degree of hardship the agreement imposes upon the employee, in particular the extent to which it hampers the employee's ability to earn a living; and (6) the effect the agreement has on the public." *Charles T. Creech Inc. v. Brown*, 2012 Ky. App. Unpub. LEXIS 1033, at *13-14 (Ky. Ct. App. Aug. 17, 2012) (discretionary review granted April 17, 2013).

For example, previously this Court found an agreement signed by an employee during the course of his employment which prevented him from selling, for a period of one year, "any products which are the same as or similar to the Company's products" to current or former customers of the company was enforceable, despite the lack of a geographical scope. *Snider Bolt & Screw, Inc. v. Quality Screw & Nut*, 2009 WL 1657549, at *1-2 (W.D. Ky. June 12, 2009); *see also Central Adjustment Bureau, Inc. v. Ingram Associates, Inc.*, 622 S.W.2d 681, 683 (Ky. Ct. App. 1981) (finding covenant not to compete with former employer for two years, non-solicitation, and nondisclosure provisions were reasonable). Specifically, this Court found that the covenant was reasonable and no more restrictive than was necessary. *Id.* at *1. This Court recognized that, while the agreement had no geographical limitations, its limited scope applying only to sales and solicitations to current or former customers "saved" it from being potentially unenforceable. *Snider Bolt & Screw, Inc. v. Quality Screw & Nut*, 2010 WL1032799, at *5 (W.D. Ky. March 17, 2010). Simply put, non-solicitation provisions aimed at previous customers of a former employer are inherently more reasonable than broader, more general non-compete provisions, which was at issue in *Calhoun v. Everman*, 242 S.W.2d 100, 102 (Ky. 1951) (considering alleged oral agreement that prohibited former employee from entering into competition in any way, either directly or indirectly, with the dry cleaning and laundry business of the plaintiff).

Analogizing to the non-solicitation provision aimed at previous customers in *Quality Screw*, ISCO argues the lack of a geographic scope does not make the NCA Agreement unenforceable. (Docket No. 10, at 9.) Relatedly, ISCO disagrees with Shugart's broad interpretation of Section 6 as preventing him from working for a competitor for a period of three years and alleges that Section 6 only prevents Shugart from soliciting former customers of ISCO

and persons whom he tried to make customers of ISCO. Despite Shugart's arguments to the contrary, the Court does not read Section 6 as precluding him from "selling piping products anywhere in the world for three (3) years." (Docket No. 9-1, at 10.) Rather, the Court reads Section 6 as prohibiting Shugart from "soliciting, contacting, or otherwise dealing within any customer of the Company, or other people that Employee sought to make a customer within three (3) years of the termination hereof" if it would result in competition with ISCO.[2]

Therefore, Section 6 is more similar to the non-solicitation provision in *Quality Screw*, rather than the broader, more general covenant not to compete in *Calhoun*, because it does not prohibit Shugart from working for competitors but only from soliciting former customers of ISCO or persons that Shugart sought to make a customer if it would result in competition with ISCO.[3] With respect to the three-year temporal limitation in Section 6, this Court previously reviewed relevant case law and found it suggested a three-year limitation can be reasonable in the context of a covenant not to compete. *Gardner Denver Drum LLC v. Goodier*, 2006 WL 1005161, at *2, *8 (W.D. Ky. Apr. 14, 2006) (finding reasonable three-year prohibition against employee working with any business that competes with former employer in the United States); *see also Lareau v. O'Nan*, 355 S.W.2d 679, 680 (Ky. 1962) (finding five-year restriction on doctor practicing in same county as his former employer was not too inequitable to be enforced); *Ceresia v. Mitchell*, 242 S.W.2d 359, 361, 364 (Ky. 1951) (affirming trial court's reformation of

---

[2] Shugart's emphasis, in his reply brief, (Docket No. 18, at 4), on the language "[e]mployee shall not directly or indirectly engage in any activity or business in competition with . . . the Company" ignores the subsequent language that states "by soliciting, contracting or otherwise dealing with any customer of the Company . . ." Thus, while the language emphasized by Shugart, when read in isolation, would be a broad noncompete preventing any competition, the subsequent language defines exactly what *type* of competition the Agreement prevents and narrows the prohibition's applicability.

[3] In any event, the Court notes that even if Section 6 prevented Shugart from working for any competitor, rather than just soliciting former or potential customers, this Court has previously found prohibitions against employers working for any competitor valid. *Gardner Denver Drum LLC v. Goodier*, 2006 WL 1005161, at *2, 8 (W.D. Ky. Apr. 14, 2006) (finding prohibition against employee working with any business that competes with former employer in the United States was valid).

noncompete agreement preventing a former business owner from competing against new business owner for a period of ten years in the local area); *Hodges v. Todd*, 698 S.W.2d 317, 318-20 (Ky. Ct. App. 1985) (finding trial court had authority to determine appropriate geographic scope for a five-year prohibition on former business owner competing in business of remanufacturing of pickup trucks and trailers, implicitly holding the a five-year temporal limitation was reasonable).[4] It is worth noting that this case involves a non-solicitation provision, which is inherently more reasonable than a broader, more general covenant not to compete which was at issue in the above cited cases. However, it is also worth noting that the above cited cases had geographic scopes, while the non-solicitation provision in this case does not have any geographic limitation.

II. Conclusion

Under Kentucky law, covenants not to compete "are valid and enforceable if the terms are reasonable in light of the surrounding circumstances." *Crowell v. Woodruff*, 245 S.W.2d 447, 449 (Ky. 1951). Determination of whether a covenant not to compete is reasonable requires a flexible, case-specific approach and an analysis of a series of factors: "(1) the nature of the industry; (2) the relevant characteristics of the employer; (3) the history of the employment

---

[4] The Court finds unpersuasive Shugart's citation to a non-binding Northern District of West Virginia case, *McGough v. Nalco Co.*, 496 F. Supp. 2d 729, 755-56 (N.D. W. Va. 2007), for the proposition that nondisclosure provisions, such as Sections 3 and 4, amount to covenants not to compete and should be subjected to the same scrutiny of a covenant not to compete . *See Papa Johns's International, Inc. v. Pizza Magia International, LLC*, 2001 WL 1789379, at *3 (W.D. Ky. 2001) (stating "this Court determines that Kentucky would recognize nondisclosure agreements that do not have specific time limits because the inequities arising from nondisclosure agreements are far less than those arising from noncompete agreements"). "As a general rule, courts analyze noncompete and nondisclosure agreements under two different standards. While noncompete agreements are, by definition, restraints of trade that receive close scrutiny from courts, nondisclosure agreements usually do not create the same types of harms and therefore receive greater deference from courts." *Id.*

In any event, the Court would find *McGough* distinguishable because, unlike the nondisclosure covenants in *McGough*, in this case the nondisclosure covenants do not amount to "a post-employment covenant not to compete." *McGough*, 496 F. Supp. 2d at 756 ("Almost all of the information Mr. McGough acquired during his years working at Nalco would fall within the definitions of confidential information described in clauses two and three.").

relationship; (4) the interests the employer can reasonably expect to protect by execution of the noncompetition agreement; (5) the degree of hardship the agreement imposes upon the employee, in particular the extent to which it hampers the employee's ability to earn a living; and (6) the effect the agreement has on the public." *Charles T. Creech Inc. v. Brown*, 2012 Ky. App. Unpub. LEXIS 1033, at *13-14 (Ky. Ct. App. Aug. 17, 2012) (discretionary review granted April 17, 2013).[5]

On the basis of the record before the Court, the Court is unable to adequately evaluate the suggested factors above. It appears additional discovery may be needed and a factual hearing required. It is ordered that the Motion to Dismiss, (Docket No. 9), is **DENIED** at this time. Scheduling shall be discussed at the May 30, 2014, telephonic hearing.

CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Defendant Charles Shugart's Motion to Dismiss is **DENIED**. (Docket No. 9.)

IT IS SO ORDERED.

Date:

cc:     Counsel

---

[5] Shugart's citation, for the proposition that the NCA Agreement is unenforceable, to *ISCO Industries, LLC v. Erdle*, 2011 WL 6826430 (E.D. N.C. Dec. 28, 2011), is not binding and distinguishable because the substantive provisions of the agreement at issue were different. Significant to that court's finding was that the agreement prohibited the former employer from attempting to sell any product or services to any existing or prospective customer *regardless of whether the product or services being sold are in competition with ISCO*. *Id.* at *6. (emphasis added) The Agreement in this case only prevents solicitation/contact of former or prospective customers *if it would result in competition with ISCO*.